IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTHONY S. VOLTZ,                                  CASE NO.:  5:22-cv-00431-JSM-PRL

      Plaintiff,

vs.

TA OPERATING LLC, a Foreign
Limited Liability Company, d/b/a
TRAVEL CENTERS OF AMERICA;
HPT TA PROPERTIES TRUST, a
Declaration of Trust; and JAMES R.
SIMMONS, JR., Individually,

      Defendant.

_____/

## DEFENDANTS TA OPERATING LLC AND HPT TA PROPERTIES TRUST'S MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESSES FOR FAILURE TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 26 AND THIS COURT'S ORDER OF OCTOBER 27, 2022

Defendants, TA OPERATING LLC d/b/a TRAVEL CENTERS OF AMERICA and HPT TA PROPERTIES TRUST, by and through their undersigned counsel, hereby respectfully submit this Motion to Strike Plaintiff's Expert Witnesses for Failure to Comply with Federal Rule of Civil Procedure 26 and this Court's Order of October 27, 2022, and request that this Court strike Plaintiff's proposed experts from servicing as witnesses and state as follows.

## FACTUAL BACKGROUND

Plaintiff, Anthony Voltz, filed a Complaint against Defendants TA Operating LLC and HPT TA Properties Trust on September 13, 2022. (Docket Number 1). The

Complaint essentially alleges TA Operating LLC and HPT TA Properties Trust were negligent by failing to have adequate security and other measures to prevent Plaintiff's attack by a third party: co-defendant James R. Simmons, Jr.

Specifically, on or about May 31, 2020, Plaintiff was located at a facility owned and operated by TA Operating LLC and HPT TA Properties Trust. Plaintiff began urinating in the parking lot near the vehicle of James R. Simmons, Jr. (Plaintiff's deposition 1/25/2023 p. 68:22-69:1) (Exhibit A). An argument ensued, and James R. Simmons, Jr. ultimately shot Plaintiff. (Plaintiff's deposition 1/25/2023 p. 70:5-71:15) (Exhibit A). Plaintiff's Complaint asserts Defendants TA Operating LLC and HPT TA Properties Trust's alleged negligence caused this incident.

On October 27, 2022, this Court entered its Case Management and Scheduling Order. (Docket Number 14). The Order states: "The Court has considered the positions of the parties as set forth in their Case Management Report, and hereby enters the following scheduling and case management requirements whose provisions are very precise and *shall be strictly adhered to*." (emphasis in original). In addition, the Order directs the parties to meet the schedule set forth therein. The schedule includes the following deadline: "**Plaintiff(s) Expert Disclosure: February 15, 2023**."

On February 15, 2023, Plaintiff served "Plaintiff's Expert Witness List." (Exhibit B). The list included: "Michael Gerard, Robson Forensics, Inc., 354 North Prince Street, Lancaster, PA 17603." Accompanying Michael Gerard's name is the following three-sentence paragraph:

Mr. Gerard relies to form his opinion based on his skill, education, and experience. It is anticipated that Mr. Gerard will testify regarding the conditions of the property on which this incident occurred and specifically regarding conditions such as lighting, security, etc. which are alleged to have negligently created an unsafe and/or dangerous premises. Mr. Gerard's C.V. is attached.

(Exhibit B). The witness list was not accompanied by any written report.

In addition, the expert witness list identifies eleven (11) non-retained experts. There is no specific identification of any of the facts or opinions to be relied upon by these eleven experts. (Exhibit B).

It is respectfully requested that this Court strike Plaintiff's purported experts due to Plaintiff's failure to provide his retained expert's report or provide any opinions held by the non-retained experts. These failures violated Rule 26(a)(2)(B) and this Court's Order of October 27, 2022.

Rule 26, Federal Rules of Civil Procedure, provides, in relevant part:

(2) *Disclosure of Expert Testimony*.

(A) In General. In addition to the disclosures required by Rule 26(a)(1), a party **must** disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, **this disclosure must be accompanied by a written report**—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support

them;
      (iv) the witness's qualifications, including a list of all
      publications authored in the previous 10 years;
      (v) a list of all other cases in which, during the previous 4 years,
the witness testified as an expert at trial or by deposition; and
      (vi) a statement of the compensation to be paid for the study
      and testimony in the case.

Rule 26(a)(2), Fed. R. Civ. P. (emphasis added).

Even if an expert witness is not required to provide a written report, a party must disclose the subject matter on which the witness is expected to present expert evidence and a summary of the facts and opinions to which the witness is expected to testify. *See* Rule 26(a)(2)(C), Fed. R. Civ. P.

## I. <u>Plaintiff's Retained Expert, Michael Gerard, Failed to Provide Any Expert Report</u>

Michael Gerard is a witness retained or specially employed by Plaintiff to provide expert testimony. Accordingly, Plaintiff was required to provide Michael Gerard's written report at the time of disclosure. *See* Rule 26(a)(2)(B), Fed. R. Civ. P. The requirements of Rule 26(a)(2)(B) are mandatory: "this disclosure *must be accompanied by a written report*." (emphasis added). "The expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them." *Lohnes v. Level 3 Communs., Inc.*, 272 F.3d 49, 60 (1st Cir. 2001). Rule 26 minimizes surprise. *See Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992).

Furthermore, pursuant to this Court's Order, Plaintiff's expert disclosure was due on or before February 15, 2023. As a result, Michael Gerard's written report was due on or before that date. "A scheduling order is not a frivolous piece of paper, idly

entered, which can be cavalierly disregarded by counsel without peril." *Morin v. United States*, 534 F. Supp. 2d 1179, 1189 (D. Nev. 2005), quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). When a scheduling order provides for expert witness disclosures, such disclosures must be made "at the times and in the sequence that the court orders." Rule 26(a)(2)(D), Fed. R. Civ. P.

It is clear that Plaintiff has violated Rule 26(a)(2)(B) and this Court's October 27, 2022, Order by failing to provide Defendants with the written report of Michael Gerard. The remedy for these violations is also clear. In the event a party fails to comply with the requirements of Rule 26, the remedy is provided in Rule 37, Federal Rules of Civil Procedure. Specifically, Rule 37(c)(1) provides, in relevant part:

> *Failure to Disclose or Supplement*. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), **the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless**.

Rule 37(c)(1), Fed. R. Civ. P. (emphasis added).

Pursuant to the plain language of Rule 37, a party that fails to comply with the expert disclosure requirements of Rule 26(a) "is not allowed to use that information or witness." Rule 37(c)(1), Fed. R. Civ. P. Accordingly, Plaintiff may not use Michael Gerard as a witness.

Rule 37(c)(1)'s sanction has been characterized as an "automatic sanction." *See, e.g., Nat'l Union Fire Ins. Co. v. Tyco Integrated Sec., LLC*, 2015 U.S. Dist. LEXIS 186356, 2015 WL 11251736 (S.D. Fla. 2015). Failure to comply with the Rule 26(a)(2)(B) requirement of producing an expert's report has been deemed sufficient not only to

exclude a witness but also a basis for dismissal of an action with prejudice. *See, e.g.,* *Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este*, 456 F.3d 272 (1st Cir. 2006). Accordingly, striking Michael Gerard as a witness is well within this Court's authority.

There are only two bases for permitting a party that fails to comply with Rule 26(a)(2)(B) to use an expert despite their failure to comply with the rule: if the failure is (1) substantially justified or (2) harmless. Neither of these bases applies in this matter.

First, Plaintiff's failure cannot be described as "substantially justified." The requirements of Rule 26 are clear. This Court's Case Management and Scheduling Order of October 27, 2022, is equally clear. The Order provides that Plaintiff's expert disclosure date was February 15, 2023. Accordingly, Plaintiff had approximately 111 days to select an expert, secure the expert's report, and provide the expert's report to Defendants. Plaintiff simply failed to comply with Rule 26 and this Court' Order.

Second, Plaintiff's failure is not harmless. The production of an expert report is not a mere formality. "[A]n expert report must be complete such that 'opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *Dyett v. N. Broward Hosp. Dist.*, 2004 U.S. Dist. LEXIS 30473, 4 (S.D. Fla. 2004). In *Dyett*, the court struck an expert in part due to inadequacy of expert's report under Rule 26. *Id.* In the instant case, Plaintiff has not produced *any* expert report.

Furthermore, Defendants' expert disclosure date is March 15, 2023. Due to Plaintiff's failure to comply with this Court's order and the applicable rules of civil procedure, Defendants are prejudiced not only in their ability to engage is discovery and prepare for trial, but also in their ability to select an appropriate expert.

Although the failure to provide a report is not excused by including the required contents of the report within the disclosure, it should be noted that Plaintiff's disclosure provides no useful information whatsoever and does not render the failure to provide a report harmless. A written report must include a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; and any exhibits that will be used to summarize or support them. *See* Rule 26(a)(2)(B), Fed. R. Civ. P. This information not only allows defendants to properly engage in discovery and prepare for trial, it allows defendants to select an appropriate expert to represent their interests.

The first sentence in the three-sentence disclosure paragraph prepared by Plaintiff states: "Mr. Gerard relies to form his opinion based on his skill, education, and experience." This non-descript, seemingly incomplete sentence provides no information. The same sentence could be supplanted into the description of any expert witness, as all experts purport to rely upon their skill, education, and experience.

The second sentence is similarly unhelpful. It provides: "It is anticipated that Mr. Gerard will testify regarding the conditions of the property on which this incident occurred and specifically regarding conditions such as lighting, security, etc. which are alleged to have negligently created an unsafe and/or dangerous premises." This

statement provides no insight into the basis for Gerard's opinions. It is largely a restatement of the allegations within the complaint. It does not include the information required by Rule 26(a)(2)(B), Federal Rules of Civil Procedure.

Finally, the third sentence of the expert witness disclosure states: "Mr. Gerard's C.V. is attached." In fact, the curriculum vitae was not attached. Even if it had been attached, it would not include the valuable information required within the expert's report, including opinions, bases for opinions, facts and data considered, and exhibits to be relied upon.

Accordingly, Plaintiff's violations of this Court's Order and Rule 26 are not harmless. The information which must be contained in the mandatory report has not been provided to Defendants. Plaintiff's violations are prejudicial to Defendants' ability to defend this matter.

## II.    <u>Plaintiff Failed to Meet the Requirements for His Non-Retained Experts</u>

Plaintiff also failed to comply with the plain language requirements of Rule 26 with respect to the non-retained experts identified in his expert disclosures.   Specifically, Plaintiff has failed to provide the subject matter on which the non-retained experts are expected to testify, and a summary of the facts and opinions to which each expert is expected to testify.

Rule 26(a)(2)(C) provides:

> (C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
>
> (i) **the subject matter on which the witness is expected to**

> **present evidence** under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii) **a summary of the facts and opinions to which the witness is expected to testify**.

Rule 26(a)(2)(C), Fed. R. Civ. P. (emphasis added).

Plaintiff has identified eleven (11) non-retained experts in his expert disclosures. There is not a single non-retained expert whose name is accompanied by a summary of the facts and opinions to which the witness is expected to testify. Instead, Plaintiff has provided a generic, boilerplate statement at the conclusion of the list. The statement is quoted here for the convenience of the Court:

> All of Plaintiff's treating physicians listed above as witnesses will be testifying in their capacity as experts in their field and with respect to Plaintiff's medical condition. Each witness is not a retained expert, but rather is a treating healthcare provider. Unless stated otherwise, neither the undersigned law firm, nor Plaintiff, has paid his/her hourly fee for treatment. Neither has this witness been furnished the entire medical records of Plaintiff for a review and opinion as is customarily done with a witness hired to conduct a compulsory medical examination. Each treating physician is presumed by the undersigned to be an expert in their stated field and will so testify at trial. As a result, this designated treating physician will testify within their respective medical specialty as to Plaintiff's complaints, history of injury, and any responses to doctor's questioning. They will testify as to their opinions concerning Plaintiff's prior treatment, health conditions, reasonableness of Plaintiff's present and future healthcare needs, Plaintiff's current and future health and work restrictions, the causation of Plaintiff's current complaints and injuries, whether Plaintiff has a permanent impairment as a result of these injuries, and/or Plaintiff's need for future care plus the cost for all treatment rendered in the past and to be obtained in the future. This witness further has written progress notes as required by Florida law and is available to both parties through discovery procedures and HIPAA forms. As far as is known, these non-retained experts have been available for deposition by subpoena by either side to provide opinions which will be elicited at trial. Those opinions at trial will be preceded by the expert's testimony as to their credentials, relationship to the patient, treatment

and care rendered, expense of said treatment and care, whether or not Plaintiff has suffered a permanent injury, impairment rating, loss of bodily function, or significant scarring and whether the expert relates his/her involvement and expense to the event sued upon. Said non-retained experts will also give opinions within a reasonable degree of medical probability within their field of testimony, about the future needs of Plaintiff in terms of care, frequency of visits, follow up surgeries, prescriptions, imaging, home care, physical therapy, P.R.N., household or job changes or aides, assistive devices, hospitalizations necessary, procedures necessary, and the projected costs of all these along with any other foreseeable needs and expenses within the expertise of this treating doctor. All expenses, both past and future, will be given in present day dollars. These non-retained expert opinions will not be solely limited to his/her records, therefore, it is recommended that defense counsel take the deposition of this physician to fully illicit all opinions this expert may have at trial.

(Exhibit B).

**This type of vague, non-descriptive disclosure completely defeats the entire purpose of requiring expert disclosures.** As this Court can see, the statement's length belies its informativeness. The statement is general, non-specific, and (most importantly) non-compliant with the requirements of Rule 26. The statement fails to provide notice to Defendants of a summary of the opinions the expert witnesses will provide. For example, Plaintiff's statement that a witness will testify "whether Plaintiff has a permanent impairment" is not a summary of the witness' opinion. It is a non-statement of opinion. This type of general statement has repeatedly been deemed insufficient under the plain language of Rule 26.

For example, in *West v. Heimermann*, 2022 U.S. Dist LEXIS 95719 (S.D. Ohio 2022), the district court struck two witnesses after the plaintiff failed to comply with Rule 26(a). Specifically, the plaintiff listed the witnesses' names and stated the

following with respect to their testimony: "Physical and mental condition of James R. West, historically and at the time Dean Heimermann acquired engines and parts." *Id.* at 29. The court held that even if these disclosures provide subject matter, "they completely ignore the second prong requiring a 'summary of the facts and opinions' to be offered by the identified experts." *Id.* at 31. The court pointed out that these disclosures fail to "indicate any view or judgment to be expressed by the experts on this topic." *Id.* Due to this inadequacy, the defendants were "left to guess at what the physicians' testimony would be and whether they should procure their own rebuttal expert testimony." *Id.* After noting plaintiff's failure to offer justification for the deficient disclosure, the court excluded the experts' testimony pursuant to Rule 37(c)(1). *Id.* at 36. *See also Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 2015 U.S. Dist. LEXIS 29918 (S.D. Ohio 2015) (holding a mere statement of topics is insufficient and holding the statement "Dr. Barton may provide testimony and opinions related to air dispersion modeling, and air monitoring that was conducted regarding the Washington Works facility, including air sampling of PFOA at Washington Works" failed to provide a summary of opinion); *Covidien LP & Covidien Holding Inc. v. Esch*, 2018 U.S. Dist. LEXIS 207542, 2 (D. Mass. 2018) (holding non-retained expert witness disclosures may not simply provide the subject matter of the expert's anticipated testimony, but must also summarize the substance of the expert's "actual and specific opinions"); *Pineda v. City & County of San Francisco*, 280 F.R.D. 517 (N.D. Cal. 2012) (holding statement that witnesses "will present factual and opinion testimony on causation, diagnosis, prognosis, [and] extent of [Pineda's]

disability" failed to comply with Rule 26(a)(2)(C).

Similarly, in the instant case, Plaintiff's disclosure lacks any information regarding the "view or judgment to be expressed by the experts" and has left Defendants to "guess at what the physicians' testimony [will] be." Perhaps the most uninformative statement Plaintiff has provided is that the "physician will testify within their respective medical specialty as to . . . any responses to doctor's questioning." Plaintiff might as well have said, "Physician will testify as to what he testifies." Plaintiff also inappropriately attempts to shift his burden to provide a summary of his experts' opinions to Defendants by stating: "it is recommended that defense counsel take the deposition of this physician to fully illicit all opinions this expert may have at trial."

Once again, the sanction for a violation of Rule 26(a) is clear and automatic: the party is not allowed to use that witness to supply evidence at trial. *See* Rule 37(c)(1), Fed. R. Civ. P. Accordingly, it is respectfully submitted that Plaintiff's non-retained experts' testimony be stricken.

### III.    There is No Good Cause to Modify the Scheduling Order

To the extent Plaintiff seeks an extension of the current deadlines, Plaintiff cannot show the "good cause" needed to warrant an extension.  Specifically, this Court's October 27, 2022, Order was entered pursuant to Rule 16(b). Rule 16(b)(4) provides: "A schedule may be modified *only for good cause* and with the judge's consent." (emphasis added). Accordingly, allowing Plaintiff to cure his violation of Rule 26 and this Court's Order by belatedly submitting a report and disclosure of

opinions would effectively allow Plaintiff to unilaterally modify the schedule in this matter. If Plaintiff would have filed a motion to modify the schedule prior to the February 15, 2023, deadline, the motion would have failed. Plaintiff could not have demonstrated the good cause required to modify the deadline. *See* Rule 16(b)(4), Fed. R. Civ. P. *See also James v. Bankatlantic¸* 2011 U.S. Dist. LEXIS 175440, 5 n.1 (S.D. Fla. 2011) (declining to overlook failure to include expert report with expert disclosure in part because there was no good cause for extending the deadline as required by Rule 16(b)(4)).

"Rule 16(b)(4)'s 'good cause' standard is a rigorous one, focusing not on the good faith of or the potential prejudice to any party, but rather on the parties' diligence in complying with the court's scheduling order." *Nolen v. Wyndham Vacation Resorts, Inc.,* 2020 U.S. Dist. LEXIS 252953, 2 (M.D. Fla. 2020). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 (11th Cir. 1998), *citing* Fed.R.Civ.P. 16 Advisory Committee's note. Plaintiff cannot demonstrate the diligence necessary to justify an extension.

Furthermore, any attempt by Plaintiff at misdirection toward a purported lack of prejudice to Defendant TA is misplaced. "If [a] party was not diligent, the [good cause] inquiry should end." *Yergey v. Brinker Fla.*, 2021 U.S. Dist. LEXIS 164253 (M.D. Fla. 2021), *quoting Sosa v. Airprint Systems, Inc.*, 133 F.3d at 1418. (alteration in original). "Diligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry." *Taylor v. Genesee & Wyo., Inc.*, 2015 U.S. Dist. LEXIS 187707, 5 (M.D. Fla.

2015).

Finally, negligence or inadvertence do not constitute good cause. "As a matter of law, Plaintiff's counsel's negligence is not good cause for failure to comply with the Scheduling Order deadlines under Rule 16(b)." *Estate of Reed v. Nat'l Specialty Ins. Co.*, 2020 U.S. Dist. LEXIS 135423, 11 (S.D. Fla. 2020), *citing Rogers v. Hartford Life & Accident Ins. Co.*, 2012 U.S. Dist. LEXIS 87433 (S.D. Ala. 2012) ("[A]uthorities are legion for the proposition that attorney inadvertence, carelessness or oversight of a published deadline is insufficient, as a matter of law, to constitute 'good cause' under Rule 16(b)(4).").

Contemporaneous with the filing of this motion, Defendants timely disclosed their experts to Plaintiff. Defendant included the written report of their medical expert. Defendant's liability expert's written report is complete, but it is being withheld until this motion has been resolved by this Honorable Court in an attempt to avoid compounding the prejudice already suffered by Defendants due to Plaintiff's failures to comply with the Federal Rules and this Court's Order requiring staggered expert disclosures such that Plaintiff's expert report is required to be produced 30 days in advance of Defendants' experts.

For all the foregoing reasons, it is respectfully requested that this Honorable Court strike Plaintiff's experts.

## **CONCLUSION**

There can be no dispute that that Plaintiff has violated both this Court's Order of October 27, 2022, and Rule 26, Federal Rules of Civil Procedure. Plaintiff failed to

provide a report for his expert and he failed to provide any statement of the opinions of his non-retained experts. The remedy for Plaintiff's failures is clear. Plaintiff may not use any of these proposed experts as witnesses. Plaintiff's failure was not substantially justified, and it cannot be considered harmless. For all the foregoing reasons, it is respectfully requested that this Honorable Court strike Plaintiff's experts as witnesses.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that he has conferred with opposing counsel, the parties were unable to agree on resolution of the motion, and the conference took place by calling and e-mailing Plaintiff's Counsel on March 14, 2023, and March 15, 2023 (Exhibit C).

Dated: March 15, 2023.        Respectfully submitted,

*s/Michael Correnti*
MICHAEL CORRENTI, ESQ.
LEAD COUNSEL
Florida Bar No. 0039279
MICHAEL DIRAIMO, ESQ.
Florida Bar No. 1002962
MCDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL  32801
*Attorneys for Defendants, TA Operating LLC*
*d/b/a Travel Centers of America and HPT TA*
*Properties Trust*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 15, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Paul W. McBride, Esq.; Law Offices of Craig Goldenfarb, P.A., 1800 S. Australian Avenue, Suite 400, West Palm Beach, FL 33409; VoltzAnthony7756920@projects.filevine.com; PMcBride@800goldlaw.com; CBrito@800goldlaw.com; RPeart@800goldlaw.com; *Attorneys for Plaintiff*

Paul M. Weekley, Esq.; Weekley Schulte Valdes Murman Tonelli, 1635 North Tampa Street, Tampa, FL 33602; service@wsvlegal.com; Lcrouch@wsvlegal.com; *Attorneys for Defendant, James R. Simmons, Jr.*

<div style="margin-left:40%;">

*s/Michael Correnti*
MICHAEL CORRENTI, ESQ.
Florida Bar No. 0039279
MICHAEL DIRAIMO, ESQ.
Florida Bar No. 1002962
MCDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800
Facsimile: (407) 246-1895
Primary Service Emails:
mcorrenti@mtwlegal.com;
VoltzvTAOperatingLLC@mtwlegal.com
*Attorneys for Defendant TA Operating LLC and HPT TA Properties Trust*

</div>

ANTHONY S. VOLTZ
JANUARY 25, 2023

JOB NO. 441270

```
 1              IN THE UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
 2                       OCALA DIVISION

 3             CASE NO.:  5:22-cv-00431-JSM-PRL

 4
     ANTHONY S. VOLTZ,
 5
            Plaintiff,
 6
     vs.
 7
     TA OPERATING LLC, a Foreign
 8   Limited Liability Company, d/b/a
     TRAVEL CENTERS OF AMERICA;
 9   HPT TA PROPERTIES TRUST, a
     Declaration of Trust; and JAMES R.
10   SIMMONS, JR., Individually,

11          Defendants.
     _____/
12

13     REMOTE VIDEOTAPED DEPOSITION OF ANTHONY S. VOLTZ
                    PAGES 1 through 222
14
                  Wednesday, January 25, 2023
15                 9:08 a.m. to 2:45 p.m.

16

17

18

19

20

21

22

23
                  Stenographically Reported By:
24                Vanese Killingbeck, RPR, CRR
                  Registered Professional Reporter
25                Certified Realtime Reporter
```

EXHIBIT
A

STENO.COM
(310) 573-8380

1  doing this, so...

2      Q.   When you were -- like sometimes when I

3  would go to a gas station, I'll see large signs

4  outside the gas station where it advertises the

5  price of the different grades of gas and sometimes

6  it'll say if there's like a food special going on.

7          Did you see any signage outside of the TA

8  where there were promises of safety for truckers?

9      A.   No, ma'am.

10     Q.   Okay.  When you had parked in your parking

11  space, what is the first thing that you did?

12     A.   I sat in the truck for a minute.  I

13  believe I smoked a cigarette, checked my stocks,

14  texted my girlfriend, good night.  She requires me

15  to always text her good night or good morning to

16  make sure she knows I'm parked somewhere or going to

17  sleep or whatever, and then I had to use the

18  restroom.

19          And with the COVID stuff, she has an

20  autoimmune disease called CVS.  So with the COVID,

21  I'd actually been refraining from going into places

22  or being in contact unless I necessarily had to.  So

23  instead of going in to use the restroom to wear a

24  mask and everything, I decided to walk to the front

25  of my truck, which was like the back of all the

```
 1   other trucks, to relieve myself.
 2        Q.   Now, were there -- were you -- did you
 3   park next -- directly next to any other trucks or
 4   any other vehicles?
 5        A.   Yes.  Yes.  I parked right in between two
 6   trucks.
 7        Q.   How would you describe those two trucks?
 8        A.   Semis.
 9        Q.   And did you notice if those were occupied
10   by truckers?  Like, was the light on inside or
11   anything like that?
12        A.   No, ma'am.
13        Q.   Did you see any other truckers or any
14   other patrons standing outside in the truck -- in
15   the overnight truck parking area when you had
16   arrived?
17        A.   No, ma'am.
18        Q.   Okay.  So is it fair to say that you pull
19   up, and, in your mind, everybody else is sleeping?
20        A.   Yes, ma'am.
21        Q.   Okay.  And then you go to urinate, you
22   walk to the front of your truck to urinate?
23        A.   Yes, ma'am.
24        Q.   Would you have been urinating on, like,
25   the concrete asphalt, or was there, like, a dirt
```

 1   area?

 2          A.    It was concrete asphalt.

 3          Q.    Were you planning on showering at all?

 4          A.    No, ma'am.

 5          Q.    Okay.  So you're urinating in the front of

 6   your truck, and then what happens next?

 7          A.    When I got done, I went to go get back in

 8   my truck, and I noticed a bright light coming at me

 9   from the back corner of my trailer.  And I figured

10   it might have been a security guard or a cop or

11   something just checking on me, because I'm a pickup

12   truck parked in with the semis.  I've had that issue

13   before.

14          And next thing you know, he tries -- gets

15   right up next to my truck and just constantly

16   blinding me with the light.  I asked him several

17   times to turn the light off.  And then he started

18   yelling and screaming about what are you doing to

19   the trucks and stuff like that, at me.  And I'm kind

20   of paraphrasing, because there's several cuss words

21   and everything else used back and forth.

22          But he was yelling at me to -- about

23   the -- being at the back of the trucks and

24   everything.  I said I just took a leak.  And he's

25   like, I don't believe you.  You need to get out of

1   here.  I said, You don't believe me.  You can walk

2   up to the front of the truck and see the puddle.

3   And he's, like, just insisted on me getting out of

4   there saying that I look like I'm up to no good and

5   this and that, and I need to leave.  And I grabbed

6   my light and shined (sic) it back at him and yelled

7   at him and asked him how he liked having the

8   light -- or light in his eyes and stuff like that.

9        And it continued on about him trying to

10  make me leave the parking lot.  And I just kept

11  insisting that it's a public parking lot, that

12  anybody can park there and everything else.

13       And then the last sentence I told him was

14  just to get back in his truck and go back to sleep.

15  And then that's when I heard the gunshot.

16  Q.    All right.  Backing up a little bit.

17       When you're referring the word -- to the

18  words he and him, you mean my client, Mr. Simmons;

19  is that correct?

20  A.    Yes, ma'am.

21  Q.    Okay.  Have you ever met him in any

22  capacity at all before this shooting incident?

23  A.    No, ma'am.

24  Q.    What were you wearing?

25  A.    I know I had camouflage sandals on.  I

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MOODY

CASE NO.: 5:22-CV-00431

ANTHONY S. VOLTZ,

     Plaintiff,

vs.

TA OPERATING LLC, a Foreign Limited
Liability Company, d/b/a TRAVEL
CENTERS OF AMERICA; HPT TA
PROPERTIES TRUST, a Declaration of
Trust; and JAMES R. SIMMONS, JR.,
Individually,

     Defendants.

_____/

## PLAINTIFF'S EXPERT WITNESS LIST

COMES NOW the Plaintiff, ANTHONY S. VOLTZ, by and through his undersigned

counsel, and pursuant to this Court's Order Setting Jury Trial and Directing Pretrial and Mediation

Procedures, files this his Expert Witness List as follows:

## TRIAL WITNESSES

1.    Michael Gerard
    Robson Forensics, Inc.
    354 North Prince Street
    Lancaster, PA 17603

Mr. Gerard relies to form his opinion based on his skill, education, and experience. It is
anticipated that Mr. Gerard will testify regarding the conditions of the property on which
this incident occurred and specifically regarding conditions such as lighting, security, etc.
which are alleged to have negligently created an unsafe and/or dangerous premises. Mr.
Gerard's C.V. is attached.

EXHIBIT

**B**

2.      Records Custodian and/or
        Adam Iglesias, Ph.D.
        11211 Prosperity Farms Road, Suite 110C
        Palm Beach Gardens, FL 33410

3.      Records Custodian and/or
        Alexandra Berger, M.D.
        1701 SE Hillmoor Dr, Suite 5
        Port St. Lucie, FL 34952

4.      Records Custodian and/or
        American Medical Response
        Richard Cote, AMR Paramedic
        Nicholas Irving, AMR EMT
        3867 West Market St, PBM 155
        Akron, OH 44333

5.      Records Custodian and/or
        Central Florida Oral & Facial Surgery
        Jad Jaffal, DMD
        1950 Laurel Manor Dr., Ste 174
        The Villages, FL 32162

6.      Records Custodian and/or
        Diagnostic Centers of the Treasure Coast
        Alv Sakrisson, M.D.
        1501 SE Lennard Road
        Port St. Lucie, FL 34952

7.      Records Custodian and/or
        ENT and Allergy Associates of Florida
        Neil G. Goldhaber, M.D.
        10075 Jog Road, Suite 309
        Boynton Beach, FL 33437

8.      Records Custodian and/or
        Ocala Regional Medical Center
        Dana Taylor, M.D.
        Jad Jaffal, DMD
        Dian Feng, M.D.
        Steven Vuu, M.D.
        Laurence Ferber, M.D.
        Jeremy Tseng, M.D.
        Carmen Villanueva, M.D.
        Joshua Hagan, M.D.
        Jason M. Clark, M.D.

        Michael Gregory, M.D.
        1431 SW 1st Ave.
        Ocala, FL 34474

9.      Records Custodian and/or
        Premier Neurology & Wellness Center
        Noor S. Yono, M.D.
        Colton Keener, PD-C
        1050 SE Monterey Rd, Ste 201
        Stuart, FL 34994

10.     Records Custodian and/or
        Radiology Associates of Ocala
        703 20th Street
        Columbus, GA 31902

11.     Records Custodian and/or
        Sheridan Emergency Physician Services, Inc.
        P.O. Box 80217
        Philadelphia, PA 19101

12.     Records Custodian and/or
        Sheridan Healthcorp, Inc.
        1613 North Harrison Parkway, Suite 200
        Sunrise, FL 33323

All of Plaintiff's treating physicians listed above as witnesses will be testifying in their capacity as experts in their field and with respect to Plaintiff's medical condition. Each witness is not a retained expert, but rather is a treating healthcare provider. Unless stated otherwise, neither the undersigned law firm, nor Plaintiff, has paid his/her hourly fee for treatment. Neither has this witness been furnished the entire medical records of Plaintiff for a review and opinion as is customarily done with a witness hired to conduct a compulsory medical examination. Each treating physician is presumed by the undersigned to be an expert in their stated field and will so testify at trial. As a result, this designated treating physician will testify within their respective medical specialty as to Plaintiff's complaints, history of injury, and any responses to doctor's questioning. They will testify as to their opinions concerning Plaintiff's prior treatment, health conditions, reasonableness of Plaintiff's present and future healthcare needs, Plaintiff's current and future health and work restrictions, the causation of Plaintiff's current complaints and injuries, whether Plaintiff has a permanent impairment as a result of these injuries, and/or Plaintiff's need for future care plus the cost for all treatment rendered in the past and to be obtained in the future. This witness further has written progress notes as required by Florida law and is available to both parties through discovery procedures and HIPAA forms. As far as is known, these non-retained experts have been available for deposition by subpoena by either side to provide opinions which will be elicited at trial. Those opinions at trial will be preceded by the expert's testimony as to their credentials, relationship to the patient,

treatment and care rendered, expense of said treatment and care, whether or not Plaintiff has suffered a permanent injury, impairment rating, loss of bodily function, or significant scarring and whether the expert relates his/her involvement and expense to the event sued upon. Said non-retained experts will also give opinions within a reasonable degree of medical probability within their field of testimony, about the future needs of Plaintiff in terms of care, frequency of visits, follow up surgeries, prescriptions, imaging, home care, physical therapy, P.R.N., household or job changes or aides, assistive devices, hospitalizations necessary, procedures necessary, and the projected costs of all these along with any other foreseeable needs and expenses within the expertise of this treating doctor. All expenses, both past and future, will be given in present day dollars. These non-retained expert opinions will not be solely limited to his/her records, therefore, it is recommended that defense counsel take the deposition of this physician to fully illicit all opinions this expert may have at trial.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served and E-Filed to   Michael  Correnti,  Esq.  (mcorrenti@mtwlegal.com;  VoltzvTAOperatingLLC@mtwlegal.com; e.service@mtwlegal.com;) of McDonald Toole Wiggins, P.A., 111 N. Magnolia Ave., Suite 1200, Orlando, FL 32801 (Counsel for TA Operating and HPT TA Properties); and Paul M. Weekley, Esq. (service@wsvlegal.com; lcrouch@wsvlegal.com;) of Weekley, Schulte, Valdes, Murman, Tonelli, 1635 North Tampa Street, Tampa, FL 33602 (Counsel for Simmons) on this 15th day of February, 2023.

LAW OFFICES OF CRAIG GOLDENFARB, P.A.
Counsel for Plaintiff
1641 Worthington Road, Ste 300
West Palm Beach, FL 33409
Phone: (561) 697-4440
VoltzAnthony7756920@projects.filevine.com
PMcBride@800goldlaw.com
CBrito@800goldlaw.com
SGoldman@800goldlaw.com

By:   */s/ Paul William McBride*
    **PAUL WILLIAM McBRIDE, ESQ.**
    *Florida Bar Number: 1003056*

| From: | Paul McBride |
|---|---|
| To: | Michael DiRaimo; Celina Brito; Michael Correnti; Voltz v TA Operating LLC; e.service; service@wsvlegal.com; lcrouch@wsvlegal.com |
| Cc: | voltzanthony7756920@projects.filevine.com |
| Subject: | RE: [EXT] SERVICE OF COURT DOCUMENTS | Voltz, Anthony v. TA Operting LLC d/b/a Travel Centers of America; HPT Properties Trust and James R. Simmons, Jr. | CASE NO.: 5:22-CV-00431 |
| Date: | Wednesday, March 15, 2023 3:12:41 PM |
| Attachments: | image001.png |
| | image002.png |
| | image004.png |

---

**WARNING:**
This is an EXTERNAL email. Please think before RESPONDING or CLICKING on links/attachments.

---

Good afternoon Mr. DiRaimo,

Our intention is to file a motion to extend the deadline in late of all the coming depositions yet and to work toward utilizing Mr. Gerard moving forward. My apologies for not responding sooner, have a pleasant afternoon/evening

**Note:** As of Aug. 1, 2022, our main office has a new mailing address. See below.


Warm regards,
Paul William McBride
Litigation Attorney



**www.800GOLDLAW.COM**

"We hold accountable those who hurt others."™
Law Offices of Craig Goldenfarb
1641 Worthington Road, Suite 300
West Palm Beach, FL 33409
Office: (561) 697-4440
Fax: (561) 687-1950

POST A GOOGLE REVIEW: West Palm Beach | Port St. Lucie


LET'S GET SOCIAL: Facebook | Instagram | YouTube | LinkedIn



*Privileged and Confidential Electronic Communication is not a secure mode of communication and may be accessed by unauthorized persons. This communication originates from the Law Offices of Craig Goldenfarb, P.A., and is protected under the Electronic Communication Privacy Act, 18 U.S.C. S2510-2521. The information contained in this E-mail message is privileged and confidential under Fla. R. Jud. Admin. 2.420 and information intended only for the use of the individual(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this communication is strictly prohibited. Personal messages express views solely of the sender and shall not be attributed to the law firm. If you received this communication in error, please notify the sender immediately by email or by telephone at (800) GOLD-LAW and destroy all copies of the original message. Thank you.*

---

**From:** Michael DiRaimo <mdiraimo@mtwlegal.com>
**Sent:** Wednesday, March 15, 2023 2:07 PM
**To:** Paul McBride <PMcBride@800goldlaw.com>; Celina Brito <cbrito@800goldlaw.com>; Michael Correnti <MCorrenti@mtwlegal.com>; Voltz v TA Operating LLC <VoltzvTAOperatingLLC@mtwlegal.com>; e.service <e.service@mtwlegal.com>; service@wsvlegal.com; lcrouch@wsvlegal.com
**Cc:** voltzanthony7756920@projects.filevine.com
**Subject:** RE: [EXT] SERVICE OF COURT DOCUMENTS | Voltz, Anthony v. TA Operting LLC d/b/a Travel Centers of America; HPT Properties Trust and James R. Simmons, Jr. | CASE NO.: 5:22-CV-00431

---

**EXHIBIT C**

Good afternoon:

Following-up on the below.  Our deadline to file is today.  Please advise.

Thanks.
Michael D.

Michael DiRaimo
McDonald Toole Wiggins, P.A.
(407) 838-4087  Direct
mdiraimo@mtwlegal.com

---

**From:** Paul McBride <PMcBride@800goldlaw.com>
**Sent:** Tuesday, March 14, 2023 2:49 PM
**To:** Michael DiRaimo <mdiraimo@mtwlegal.com>; Celina Brito <cbrito@800goldlaw.com>; Michael Correnti <MCorrenti@mtwlegal.com>; Voltz v TA Operating LLC <VoltzvTAOperatingLLC@mtwlegal.com>; e.service <e.service@mtwlegal.com>; service@wsvlegal.com; lcrouch@wsvlegal.com
**Cc:** voltzanthony7756920@projects.filevine.com
**Subject:** RE: [EXT] SERVICE OF COURT DOCUMENTS | Voltz, Anthony v. TA Operting LLC d/b/a Travel Centers of America; HPT Properties Trust and James R. Simmons, Jr. | CASE NO.: 5:22-CV-00431

<div style="border:1px solid red; background-color:#c5d9a0; padding:4px; text-align:center;">

**WARNING:**
This is an EXTERNAL email. Please think before RESPONDING or CLICKING on links/attachments.

</div>

Good afternoon all,

I am taking a look at this now and will have a reply by tomorrow, thank you

**Note:** As of Aug. 1, 2022, our main office has a new mailing address. See below.


Warm regards,
Paul William McBride
Litigation Attorney



**www.800GOLDLAW.COM**

"We hold accountable those who hurt others."™
Law Offices of Craig Goldenfarb
1641 Worthington Road, Suite 300
West Palm Beach, FL 33409
Office: (561) 697-4440
Fax: (561) 687-1950
POST A GOOGLE REVIEW: West Palm Beach | Port St. Lucie

LET'S GET SOCIAL: Facebook | Instagram | YouTube | LinkedIn



*Privileged and Confidential Electronic Communication is not a secure mode of communication and may be accessed by unauthorized persons. This communication originates from the Law Offices of Craig Goldenfarb, P.A., and is protected under the Electronic Communication Privacy Act, 18 U.S.C. 52510-2521. The information contained in this E-mail message is privileged and confidential and/or Fla. R. Jud. Admin. 2.420 and information intended only for the use of the individual(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this communication is strictly prohibited. Personal messages express views solely of the sender and shall not be attributed to the law firm. If you received this communication in error, please notify the sender immediately by email or by telephone at (800) GOLD-LAW and destroy all copies of the original message. Thank you.*

**From:** Michael DiRaimo <mdiraimo@mtwlegal.com>
**Sent:** Tuesday, March 14, 2023 12:45 PM
**To:** Celina Brito <cbrito@800goldlaw.com>; Michael Correnti <MCorrenti@mtwlegal.com>; Voltz v TA Operating LLC <VoltzvTAOperatingLLC@mtwlegal.com>; e.service <e.service@mtwlegal.com>; service@wsvlegal.com; lcrouch@wsvlegal.com
**Cc:** voltzanthony7756920@projects.filevine.com; Paul McBride <PMcBride@800goldlaw.com>
**Subject:** RE: [EXT] SERVICE OF COURT DOCUMENTS | Voltz, Anthony v. TA Operting LLC d/b/a Travel Centers of America; HPT Properties Trust and James R. Simmons, Jr. | CASE NO.: 5:22-CV-00431

Good afternoon Mr. McBride:

Please accept this as a follow-up to a voicemail I left this morning and pursuant to Local Rule 3.01, as a good-faith attempt to resolve this issue prior to filing a Motion to Strike.  On February 15, 2023, Plaintiff filed his Rule 26 expert witness disclosure without a corresponding expert witness report. Please advise if you intend on withdrawing Mr. Michael Gerard as an expert witness.  Time is of the essence as our expert witness disclosure deadline is March 15, 2023.

Thank you.


Michael DiRaimo
McDonald Toole Wiggins, P.A.
(407) 838-4087  Direct
mdiraimo@mtwlegal.com

---

**From:** Celina Brito <cbrito@800goldlaw.com>
**Sent:** Wednesday, February 15, 2023 4:37 PM
**To:** Michael Correnti <MCorrenti@mtwlegal.com>; Voltz v TA Operating LLC <VoltzvTAOperatingLLC@mtwlegal.com>; e.service <e.service@mtwlegal.com>; service@wsvlegal.com; lcrouch@wsvlegal.com
**Cc:** voltzanthony7756920@projects.filevine.com; Paul McBride <PMcBride@800goldlaw.com>
**Subject:** [EXT] SERVICE OF COURT DOCUMENTS | Voltz, Anthony v. TA Operting LLC d/b/a Travel Centers of America; HPT Properties Trust and James R. Simmons, Jr. | CASE NO.: 5:22-CV-00431

**WARNING:**
This is an EXTERNAL email. Please think before RESPONDING or CLICKING on links/attachments.

| | |
|---|---|
| **COURT:** | **United States District Court, Middle District of Florida, Ocala Division** |
| **CASE STYLE:** | **Voltz, Anthony v. TA Operting LLC d/b/a Travel Centers of America; HPT Properties Trust and James R. Simmons, Jr.** |
| **CASE NUMBER:** | **5:22-CV-00431** |
| **DOCUMENTS TO BE SERVED:** | **Plaintiff's Expert Witness List** |
| **SUBMITTED BY:** | **Paul William McBride, Esquire**<br>**(561) 697-4440** |

**Note:** As of Aug. 1, 2022, our main office has a new mailing address. See below.

**Celina Brito, FRP**
Senior Litigation Paralegal to Paul William McBride, Esq.



**www.800GOLDLAW.COM**

"We hold accountable those who hurt others."™

**Law Offices of Craig Goldenfarb**
1641 Worthington Road, Suite 300
West Palm Beach, FL 33409

Office:  (561) 697-4440
Fax:  (561) 687-1950

**POST A GOOGLE REVIEW:** West Palm Beach  |  Port St. Lucie

**LET'S GET SOCIAL:** Facebook | Instagram | YouTube | LinkedIn



Privileged and Confidential Electronic Communication is not a secure mode of communication and may be accessed by unauthorized persons. This communication originates from the Law Offices of Craig Goldenfarb, P.A., and is protected under the Electronic Communication Privacy Act, 18 U.S.C. S2510-2521. The information contained in this E-mail message is privileged and confidential under Fla. R. Jud. Admin. 2.420 and information intended only for the use of the individual(s) named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this communication is strictly prohibited. Personal messages express views solely of the sender and shall not be attributed to the law firm. If you received this communication in error, please notify the sender immediately by email or by telephone at (800) GOLD-LAW and destroy all copies of the original message. Thank you.